[Civ. No. 7819.  Second Appellate District, Division Two.—September 29, 1933.]

WILLIAM RICHARD IRWIN, Respondent, v. PICKWICK STAGES SYSTEM, INCORPORATED et al., Appellant.

[Civ. No. 7822.  Second Appellate District, Division Two.—September 29, 1933.]

ANNIE A. IRWIN, Respondent, v. PICKWICK STAGES SYSTEM, INCORPORATED et al., Appellants.

[Civ. No. 7821.  Second Appellate District, Division Two.—September 29, 1933.]

FLORENCE B. IRWIN, a Minor, etc., Respondent, v. PICKWICK STAGES SYSTEM, INCORPORATED et al., Appellants.

[Civ. No. 7820.  Second Appellate District, Division Two.—September 29, 1933.]

BETTY B. IRWIN, a Minor, etc., Respondent, v. PICKWICK STAGES SYSTEM, INCORPORATED et al., Appellants.

B. P. Gibbs and George P. Kinkle for Appellants.

George Appell and Earl Newmire for Respondents.

CRAIG, J.—These are actions to recover damages for personal injuries claimed to have been suffered by the several plaintiffs through alleged negligence of Pickwick Stages

System, a corporation, and R. I. Bailey, who was the driver of the stage known as St. Charles, in which the plaintiffs were riding at the time of the accident. This took place November 23, 1929, in San Bernardino County, California, near a point called Baker. It appears that the plaintiffs were regular and paid passengers of the stage. The stage was being driven over a straight highway which was on a practically level grade and as it was coming up out of a slight dip in the road it veered abruptly to the left and went off the highway and turned over. The plaintiffs sustained severe injuries. The answers in effect deny ownership or operation of the stage.

The principal issues involved the sufficiency of the evidence of ownership of the bus by the defendant corporation, and employment by it of defendant Bailey. These matters were first presented on motion for nonsuit, then by motion for a directed verdict for the defendant corporation, and later on motion for new trial and the appeal from the judgment.

At the time of the motion for nonsuit plaintiffs had placed in evidence proof that at the time of the accident the stage bus St. Charles was registered with the motor vehicle department of the state of California in the name of Pickwick Stages System as its legal owner. When the injuries to plaintiffs were sustained it was established and stipulated that the plaintiffs were then passengers on said stage. We think this was a sufficient showing to constitute a *prima facie* proof of the defendant corporation's ownership of the bus and that the driver, Bailey, was then employed by it, and acting within the scope of his employment. Hence the motion for nonsuit was properly denied.

We proceed to consider the more difficult question as to whether this proof was sufficiently overcome by evidence introduced after plaintiffs' case had been rested.

It is conceded by the appellants that "this evidence on behalf of respondents created an inference that the driver of the bus, appellant R. I. Bailey, was acting as an agent and servant of the appellant Pickwick Stages System, Inc.", but with striking inconsistency it is declared in appellants' brief "that there was a total failure of proof that the appellant R. I. Bailey, driver of the bus involved in this case, at the time of the accident, was an agent, servant or

employee of the appellant Pickwick Stages System, Inc.''.
If the first statement quoted is true, the second cannot be.
Authorities cited by both the respondents and appellants
establish that proof even if only regarded as consisting of
the evidence above admitted to exist would constitute suffi-
cient to be a *prima facie* showing on the point in question.
(*Maupin* v. *Solomon*, 41 Cal. App. 323 [183 Pac. 198];
*Judson* v. *Bee Hive Auto Service Co.*, 136 Or. 1 [294 Pac.
588, 297 Pac. 1050, 74 A. L. R. 944], and cases there cited.)

The injuries were sustained on the twenty-third day
of November, 1929. Plaintiffs' Exhibit 1, which is a certifi-
cate of registration with the motor vehicle department of the
state of California, indicates that the Pickwick Stages Sys-
tem was the legal owner of the stage St. Charles beginning
with the twenty-second day of August, 1929, and that it
was registered to that corporation for the year 1929. In
many cases cited by the appellants where a *prima facie* case
was made out by the plaintiff as was done here, the defend-
ant produced evidence conclusively showing that, notwith-
standing the apparent ownership of the defendant and in
spite of the initial showing that the person whose negligence
caused the injury was the employee of the defendant and
acting within the scope of his employment, one or both of
these essentials in truth did not exist when the accident
occurred. Among such cases are *Maupin* v. *Solomon, supra;*
*Brown* v. *Chevrolet Motor Co.*, 39 Cal. App. 738 [179 Pac.
697]; *Rock* v. *Orlando*, 100 Cal. App. 498 [280 Pac. 377];
*Preo* v. *Roed*, 99 Cal. App. 372 [278 Pac. 928]; *Fahey* v.
*Madden*, 56 Cal. App. 593 [206 Pac. 128]; *Burns* v. *Southern
Pacific Co.*, 43 Cal. App. 667 [185 Pac. 875]; *Judson* v.
*Bee Hive Auto Service Co., supra.* However, in each of these
instances the evidence introduced by the defendant was un-
contradicted and free from reasonable suspicion, and so
clear and convincing as to dispel the inferences created by
the plaintiffs' *prima facie* showing and to leave the state
of the evidence such that there was in law no conflict for
the jury to weigh and no course for the trial court to
pursue except to instruct the jury to render a verdict for
the defendant. Such must be the type of proof given by
a defendant, otherwise an appellate court is bound by the
familiar rule that where there is a substantial conflict in the
evidence the decision of the trial court on a question of fact

will not be disturbed. ▆▆ Here it is appropriate to observe that the plaintiffs' showing as to ownership of the St. Charles by the defendant corporation amounted to more than an inference or a disputable presumption, as was the case in the decisions last mentioned. Here we have evidence of such a character as the law has decreed shall be held conclusive. By the California Vehicle Act, section 36, it is required that the owner of every motor vehicle operated on the public highway be registered. The St. Charles was registered by the Pickwick Stages System, Inc., as owner. Section 45 of the same act provides a procedure required to be followed by the legal owner of such a vehicle who would transfer title thereto to another, and in subdivision (e) thereof it is enacted: ''(e) Until said subdivision shall have issued said new certificate of registration and certificate of ownership as hereinabove in subdivision (d) provided, delivery of such vehicle shall be deemed not to have been made and title thereto shall be deemed not to have passed and said intended transfer shall be deemed incomplete and not to be valid or effective for any purpose.'' If authority is required as to the legal effect of the word ''deemed'' we have it in numerous decisions. That the words ''shall be deemed'' establish an absolute requirement and create a conclusive presumption is held in *In re Green's Estate*, 99 Misc. 582 [164 N. Y. Supp. 1063]; *Waldron's Estate*, 84 Colo. 1 [267 Pac. 191]; *McCluskey* v. *Hunter*, 33 Ariz. 513 [266 Pac. 18]. In *Kerckhoff-Cuzner Mill & Lumber Co.* v. *Olmstead*, 85 Cal. 80 [24 Pac. 648], it is said: ''The words 'shall be deemed equivalent to a completion' mean shall be equal in legal effect to a completion; that is, shall be treated, for the purpose of filing a lien, as an actual completion.''

▆▆ We proceed to examine and consider the defendants' evidence on these issues. The witness Libby testified that he was secretary and general counsel for the Pickwick Stages System; that he kept the corporation records and of his own knowledge knew that at the time of the accident Pickwick Stages System did not operate a fleet of busses between Salt Lake City, Utah, and Los Angeles. Of course, the records of the corporation would have been the best evidence to establish this fact if it were true; but its weight was further affected by plaintiffs' exhibit 21. This is an application of the Pickwick Stages System to transfer a certificate of con-

venience and necessity theretofore granted the Pickwick Stages System to the Pacific Greyhound of California, Ltd., and an order thereon permitting such transfer. From this exhibit it appears that such a certificate of convenience and necessity had been granted the defendant corporation before the date of such exhibit, to wit, in January, 1929; that it had been granted a franchise to operate busses over a route including the place where this accident occurred. The order permitting the transfer of this franchise is dated January 20, 1930, so that from this inference would be justified that the Pickwick Stages System owned the franchise at the date of the plaintiffs' injury. While this transaction is not full and complete proof that at the time of the accident the Pickwick Stages System still held the franchise referred to in this application and order and was operating stages in its exercise, it is clear that if the Pickwick Stages System had transferred said franchise to the Pickwick Stage Lines, Inc., in whose employ the appellant contends the driver was, and which corporation it is claimed was the owner of the St. Charles stage at the time of the accident, such transfer of franchise would have been a violation of the order of the Railroad Commission, as appears from the following quotation from said order:

"3. The rights and privileges herein authorized may not be discontinued, sold, leased, transferred, nor assigned, unless the written consent of the railroad commission to such discontinuance, sale, lease, transfer, or assignment has first been secured.

"4. No vehicle may be operated by applicant herein unless such vehicle is owned by applicant, or is leased by them under a contract or agreement satisfactory to the railroad commission."

Checks were introduced in evidence and identified by the driver of the car, Bailey, as having been received by him. They read: "Pay to the order of R. Bailey," and were signed "Pickwick Stage Lines, Inc., by Earl E. Wilson, By Geo. Martinson." The drivers' list of defendant company bearing names of its employees for a period from 1916 to March 21, 1929, one week before the accident, was received in evidence. It did not contain Bailey's name. A pay-roll sheet of Pickwick Stage Lines, Inc., for November, 1929, showed the name "R. Bailey". This was identified by the

witness Martinson, who was director and manager of the accounting division of Pickwick Stage Lines, Inc. Also Warren E. Libby testified that he was director and secretary of the defendant corporation and kept its records; also that the defendant corporation had never operated cars between Salt Lake City and Los Angeles. If the jury had viewed this evidence in a light favorable to the defendant and as argued by its counsel, the logical and necessary conclusion would be that Bailey was not in the employ of Pickwick Stages System, Incorporated, at the time of the injuries of which complaint is made. From proof of ownership of this automobile a presumption arose that it was being operated for the purposes of its owner, the defendant. (*Randolph* v. *Hunt*, 41 Cal. App. 741 [183 Pac. 358, 361].) However, this presumption, unlike the one of ownership in this case, might have been overcome by substantive evidence refuting it; yet even as against such evidence it was sufficient to create a conflict in the evidence. (*Randolph* v. *Hunt, supra; Perry* v. *Paladini, Inc.*, 89 Cal. App. 275 [264 Pac. 580].) Hence, of course, the decision of the jury evidenced by its verdict and of the trial court by its ruling on motion for a new trial, are conclusive. Further, the verdict rendered indicates that the jury did not accept the defendants' evidence at its apparent face value, did not draw the inferences from the testimony given which defendant claims should have been drawn, perhaps even did not believe some of that testimony. As was said in *Ferris* v. *Sterling*, 214 N. Y. 249 [108 N. E. 406, Ann. Cas. 1916D, 1161], quoted with approval in *Perry* v. *Paladini, Inc., supra,* under similar circumstances as we have here: "The jury may . . . have thought that witnesses who would falsely disclaim ownership of a car would falsely disclaim responsibility for its management. These and like considerations were for them." Here the fact of ownership of the St. Charles by defendant corporation was established, although denied by it and its witnesses. As was said in the opinion of *Perry* v. *Paladini, Inc.,* the case just mentioned: "The jury did have the right to discredit much testimony adduced, and the jury likewise had before them the manifest interest of the various witnesses." Much of the evidence in denial of Bailey's employment by defendant is only such as might give rise to an inference negativing such employment, as, proof that

another corporation paid him money; the rest was either not the best that might have been produced or otherwise of a character justifying suspicion as to its reliability. And so where, as here, both the jury and the trial judge must be presumed to have discredited the witnesses and refused to accept as true the evidence adduced in support of defendants' contention on this point of Bailey's employment, this court cannot hold that error has been committed without invading the province of both jury and trial court.

With the evidence in this state we have a record in which the showing is not comparable with that presented in the numerous cases cited by appellants in which there was held to be presented for the defense clear, positive and uncontradicted evidence, free from suspicion to disprove agency or present ownership, and that as against such proof the inference based upon former ownership was overcome and failed to create a substantial conflict in the evidence of a character sufficient to sustain a judgment for the plaintiffs. Here ownership of the bus was conclusively established. The agency of the driver only remains subject to question. Throughout the decisions we find this to be the test: Was the proof against the inference in question uncontradicted; was it clear, positive and decisive; and further, was it free from suspicion? And this is logically so, otherwise the law would stultify itself by compelling presumed belief in testimony which the minds of the jury or judge could not reasonably accept and believe. ■ It is elementary that courts are not forced to accept as true a statement of a witness merely because it is uncontradicted. It may be highly improbable and yet incapable of contradiction. If the evidence submitted permits of suspicion as to its verity, if it is apparent that better and more conclusive evidence might have been offered, evidence which it was apparently within the power of the party relying upon weaker and less satisfactory evidence to produce, thoughtful and reasonable minds have a right to suspect that had the best evidence been offered it would not have sustained the inferior proof. The best evidence would have been clear and conclusive. Such was the case of *Judson* v. *Bee Hive Auto Service Co.*, *supra*, principally stressed by appellant, where the original written contract sustaining defendants' contention was before the jury. In each of the cited cases such direct, final

and best proof was in evidence. In these instances there was no room for the application of the wise presumption made a part of our law of evidence by subdivision 7 of section 2061 of the Code of Civil Procedure, that "if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust". We think the evidence given to overcome plaintiffs' affirmative showing was not above suspicion nor of that complete and final nature requiring or justifying a directed verdict in favor of the defendants. █ Again, regardless of who paid the driver his wages and of who was his immediate employer, since the jury must have believed that at the time of the injury to plaintiffs the defendant corporation owned the bus St. Charles and the franchise by virtue of which it was being operated the law created the driver its agent. (*Lee* v. *Southern Pac. R. Co.*, 116 Cal. 97, 100 [47 Pac. 932]; *Johnson* v. *Southern Pac. R. Co.*, 154 Cal. 285 [97 Pac. 520]; Const., art. XII, sec. 10.)

If some other person or corporation was lawfully operating the defendant corporation's stage or using its franchise in such manner as to relieve it from liability for negligence it was incumbent on it to place before the court a frank, open, complete picture of its transactions in that behalf if it would make its case so far above suspicion as to require a directed verdict. As was said in *Johnson* v. *Southern Pac. R. Co., supra:* "It can only relieve itself from responsibility for injuries resulting from such operation by showing a lease made to the operating company under statutory authority." This it did not choose to do.

█ It is contended that an instruction given by the court upon the doctrine of *res ipsa loquitur* was erroneous in that it indicated that if the plaintiffs had made a *prima facie* case as to injury, ownership of the conveyance and agency, the burden of proof was thrown on defendants to show that such injuries were sustained without the negligence of the defendants or by unavoidable or inevitable accident. In other instructions given the jury they were fully informed as to the necessity that the plaintiff prove all material and affirmative allegations of the complaint by a preponderance of the evidence. It is not necessary that each instruction contain all of the law bearing on a particular phase of the

case. In this instance no prejudicial error occurred. (*Bonneau* v. *North Shore R. Co.,* 152 Cal. 409 [93 Pac. 106, 125 Am. St. Rep. 68].) As to the other instructions criticised by appellant, in view of our holding heretofore stated on the law governing the particular facts shown in this record we think no error is shown.

The judgments are affirmed.

Works, P. J., and Stephens, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 27, 1933.